UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

─────────────────

№ 05-CV-4179 (JFB) (ETB)

─────────────────

BBC INTERNATIONAL LTD.,

Plaintiff,

VERSUS

LUMINO DESIGNS, INC.,

Defendant.

─────────────────

MEMORANDUM AND ORDER
April 12, 2006

─────────────────

JOSEPH F. BIANCO, District Judge:

The defendant, Lumino Designs, Inc. (hereinafter "Lumino") has moved to alternatively transfer, stay or dismiss the instant suit, wherein plaintiff BBC International Ltd. (hereinafter "BBC") seeks a declaratory judgment of non-infringement and invalidity of a patent owned by Lumino, as well as damages for abuse of process resulting from Lumino's filing of an action against customers of BBC in the United States District Court for the Northern District of Illinois for an improper purpose. For the reasons stated below, the Court transfers the instant case to the Northern District of Illinois under the authority of 28 U.S.C. § 1404(a).

I. BACKGROUND

Lumino, a New York corporation, owns the rights and interests to United States Patent No. 5,743,616, entitled "LED Illuminated Image Display," (the "'616 patent"), issued on April 28, 1998. The '616 patent involves a light emitting diode (LED) surface which it claims to cover a "light up" feature that is used in children's footwear.[1] As part of its efforts to enforce the '616 patent, Lumino filed suit in the United States District Court for the Northern District of Illinois on June 24, 2005 (hereinafter referred to as the "Illinois Action") against a number of retailers that it alleges have infringed on its patent by selling shoes including the "light up" feature, including Target Corporation and Target Brands, Inc. (hereinafter collectively "Target"), Footstar, Inc. (hereinafter

─────────────────

[1] The shoes at issue are sneakers that include LEDs as sources of light that are attached to the sole or the upper portion of the shoe. When the shoes are moved, the LEDs light up, typically in a flashing pattern.

"Footstar"), the Stride Ride Corporation (hereinafter "Stride Ride") and the Kmart Holdings Corporation (hereinafter "Kmart").[2] In their answers, the defendants asserted affirmative defenses and counterclaims alleging non-infringement and patent invalidity.

BBC, a Delaware corporation, is a buying agent that facilitates the import and sale of shoes including the "light up" feature, which are manufactured in China and other Asian countries. BBC claims to have entered into separate agreements with Stride Ride, Target, and Footstar,[3] under which they operate as a buying agent or subagent with respect to the procurement of footwear and apparel for the retailers. (Compl. ¶¶ 9-12.)[4] BBC acknowledges that it provides the retailers with many of the Lighted Shoe Products at issue in the Illinois Action. (Compl. ¶ 8.) Under its agreements with the retailers, BBC is required to indemnify and hold them harmless from all claims, losses, expenses, damages, costs and attorneys' fees that they may incur by reason of any claims, litigation or allegations made against them with regard to copyright, patent and trademark rights arising from the purchase or sale of the Lighted Shoe Products. (Compl. ¶ 13.)[5]

On September 1, 2005, BBC filed the instant action seeking a declaratory judgment that the '616 patent is invalid, or that the Lighted Shoe Products do not infringe the patent. Additionally, BBC seeks damages on an abuse of process claim, which alleges that Lumino filed the Illinois Action against its customers in bad faith to extort an unwarranted settlement.[6]

On November 8, 2005, Lumino amended its complaint in the Illinois Action to add patent infringement claims against BBC. Lumino also added a number of other retailers as defendants for selling Lighted Shoe Products, including Kohl's Corporation, Sears

---

[2] The complaint in the Illinois Action identifies a host of sneaker models that it alleges infringes upon the '616 patent, including: "Buzz Lightyear," "Play Ball Flash Light," "Street Lights," "The Incredibles," "Solar," "Orbit," "Spiderman," "Hero Lights," "Buzz Lightyear Commander," "Arizona Lights Zip II," and "Rocket Buzz." All the shoes at issue are collectively referred to as the "Lighted Shoe Products" for the purposes of this opinion.

[3] According to BBC's complaint in the instant action, Footstar is the primary supplier of footwear for sales in KMart stores. (Compl. ¶ 11.)

[4] According to BBC, its responsibilities as a buying agent/subagent include: "(a) locating new sources for supply of Lighted Shoe Products, (b) negotiating with the new sources and the Customers' existing suppliers, (c) soliciting offers to sell the Lighted Shoe Products, (d) procuring samples, (e) placing orders with suppliers, (f) arranging for and expediting shipments to the Customers, and (g) facilitating payment to the suppliers." (Compl. ¶ 6.)

[5] The record reflects the fact that Lumino was aware of the fact that BBC acted as buying agent for the retailer defendants in the Illinois suit, through a letter sent by BBC's counsel on April 14, 2005, which was in response to demand letters sent by Lumino to the retailer defendants. (Pl. Ex. C.) Despite this, BBC was not initially named as a defendant in the Illinois Action.

[6] At oral argument, counsel for plaintiff claimed that they intended to drop the abuse of process claim. However, the Court treats the claim as still part of the lawsuit for the purposes of this opinion since the plaintiff has not stipulated to dismissing that claim as of this date. In any event, the existence or non-existence of that claim does not impact the Court's ruling on the instant motion.

Roebuck and Co., Brown Shoe Company, Inc., and J.C. Penney Company, Inc.

Lumino moves to transfer, stay or dismiss the instant action, in favor of the Illinois Action, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a). Further, Lumino moves to dismiss BBC's abuse of process cause of action for failure to state a claim for which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

II. DISCUSSION

A. Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In considering a transfer under § 1404(a), a district court must consider both the private interests of the litigants as well as the public interests. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947). Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants witnesses and [the] public against unnecessary inconvenience and expense.'"[7] A ruling on a request to transfer under § 1404(a) is committed to the sound discretion of the trial judge. *See Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Discretion is to be exercised "upon notions of convenience and fairness on a case-by-case basis."[8] In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice."[9]

The parties do not dispute that this action could have been brought in the Northern District of Illinois. Rather, the parties focus on whether transfer would promote the interests of justice and the convenience of the parties. Although the Second Circuit has not catalogued all of the considerations that should be considered as part of a court's exercise of discretion, district courts in the circuit generally consider a number of factors, including:

> (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of circumstances.

*In re Hanger Orthopedic Group, Inc. Securities Litig.,* 2006 WL 466485, at *2 (E.D.N.Y. Feb. 28, 2006) (internal citations omitted); *see also Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (collecting cases). The moving party,

---

[7] *Mastercard Int'l Inc. v. Lexcel Solutions, Inc.,* 2004 WL 1368299, at * 5 (S.D.N.Y. Jun. 16, 2004) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

[8] *Publicker Indus. Inc. v. States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992).

[9] *Clarendon Nat'l Ins. Co. v. Pascual*, 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000).

Lumino, bears the burden of making a showing that transfer is warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.,* 88 F. Supp. 2d 31, 34-35 (E.D.N.Y. 2000) (citing *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978)).

B. First-to-File Principle

Although Lumino touches on many of the considerations enumerated above, the focus of their argument is that a transfer is appropriate because the Illinois Action is closely related to the instant action and the Illinois Action was filed first. It is well-settled that earlier-filed related lawsuits take precedence. *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989) ("The general rule, and the rule in the Second Circuit, is that 'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances.") (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)). Further, courts frequently exercise their authority under § 1404(a) to transfer litigation to other districts in which related suits are pending in the interests of efficiency and judicial economy. *Wyndam Assoc. v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968) ("[T]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.").[10]

---

[10] *See also Goggins v. Alliance Capital Mgmt., L.P.,* 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) (transferring case to District of New Jersey where there was pending related litigation); *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F. Supp. 1294 (D.N.J. 1990) (transferring case to District of Columbia where related action was filed there first).

There is no doubt that the Illinois Action and the instant action are closely-related; they both involve claims regarding the validity of the '616 patent, and if valid, whether the Lighted Shoe Products infringe upon that patent. Since the Illinois Action was filed first, it should take priority under the baseline rule.[11]

C. Customer Suit Exception

Despite the fact that the Illinois Action was filed first, BBC claims that the instant declaratory judgment suit takes priority despite the general first-to-file rule, because of the "customer suit" exception which exists in patent cases. The exception applies where the first suit is an infringement suit against customers and the later-filed suit is a declaratory judgment action brought by the manufacturer of the allegedly infringing goods. *Kahn,* 1081 F.2d at 1081; *Gluckin*, 407 F.2d at 178. Because courts have detected a high degree of forum shopping in patent cases, they have enacted this exception

---

[11] BBC argues that the instant action should be considered the first suit to be filed, since it was the first lawsuit to be filed that specifically alleged claims between BBC and Lumino; BBC was not added as a defendant in the Illinois Action until after the instant complaint was filed. The Court disagrees. In patent lawsuits, courts regularly consider an earlier lawsuit filed against allegedly infringing retailers as the first filed action *vis-á-vis* a subsequently filed declaratory judgment action filed by a distributor or manufacturer against the patent holder who is the plaintiff in the retailer suit, even where the declaratory judgment plaintiff was not initially named as a defendant in the retailer suit. *See, e.g., Kahn*, 889 F.2d at 1081; *see also Air Products and Chemicals, Inc., v. MG Nitrogen Services, Inc.,* 133 F. Supp. 2d 354, 356 (D. Del. 2001).

4

to protect the "manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Kahn,* 889 F.2d at 1081 (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)). The manufacturer is generally the real party in interest, as it frequently has to protect its customers, often through indemnification agreements.

As a threshold matter, it is not plain that the customer suit exception applies in the instant case because BBC is a importer and reseller, and not a manufacturer of the allegedly infringing goods. *Kash 'N Gold, Ltd. v. ATSPI, Inc.,* 690 F. Supp. 1160, 1164 (E.D.N.Y. 1988) (noting that where a declaratory judgment action was filed by "an importer, not a manufacturer, [. . .] the usual inference that its forum has an equivalent or stronger nexus to the litigation than the forum of a customer action is not justified"); *Ciba-Geigy Corp. v. Minnesota Mining and Manuf. Co.,* 439 F. Supp. 625, 630 (D.R.I. 1977) (noting the importance of distinguishing manufacturers and suppliers as critical in determining whether or not the customer suit exception should apply); *but see Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.,* 225 USPQ 1258, 1259 (D. Mass. 1985) (holding that an importer could be considered to be in the shoes of a manufacturer for the purposes of the customer suit exception). Witnesses to the manufacture of the Lighted Shoe Products have to come from China and other Asian countries, and there is no significant difference in burden by travel to Chicago as opposed to New York.

In any event, although the Illinois Action otherwise bears the basic hallmarks of a customer suit, the exception is inapplicable because BBC did not properly file its declaratory judgment action in its *home* forum. *Codex,* 553 F.2d at 738 ("a manufacturer's declaratory judgment action, *in its home forum*, at least if brought no later than promptly after a customer action, should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued") (emphasis added); *Emerson Elec. Co. v. Black and Decker Manuf. Co.*, 606 F.2d 234, 240-41 (8th Cir. 1979) (same); *see also A.P.T., Inc. v. Quad Envtl. Technologies Corp., Inc.*, 698 F. Supp. 718, 722 (N.D. Ill. 1988) (rejecting application of the customer suit exception in part because the forum in which the declaratory judgment action was filed was not a home forum to the plaintiff manufacturer in that action). This limitation on the customer suit exception is sensible–although a manufacturer may have a strong interest in protecting its customers, it should not have unfettered discretion to file a suit anywhere that would trump the baseline rule which gives priority to suits which are filed first. A defendant manufacturer should not be able to use a rule that has been crafted for the explicit purpose of deterring forum shopping to pick a district in which a patent suit will proceed that is not its home forum. Although BBC may have been located in New York at one point, it has been a Delaware corporation and has moved its operations out of the state for a number of years, so the Eastern District of New York is not its home forum.

In addition, the customer suit exception does not apply because BBC could have been sued for infringement in the Northern District of Illinois. *Codex*, 553 F.2d at 738 ("a manufacturer's declaratory judgment action, in its home forum, at least if brought no later than promptly after a customer action, should take precedence over a mere customer action *in a jurisdiction in which the manufacturer*

*could not be sued.*") (emphasis added); *see also Emerson Elec.*, 606 F.2d 234, 240-41 (8th Cir. 1979) (same); *Rhode Gear,* 225 USPQ at 1260 (noting that the customer suit exception is inapplicable if evidence existed that the declaratory judgment plaintiff could be sued in the customer lawsuit forum); *see also Ciba-Geigy,* 439 F. Supp. at 629 (discussing importance of the element of customer suit exception requiring that the manufacturer could not be sued under the patent venue statute, 28 U.S.C. § 1400(b) in the district in which the initial customer action was brought). This is not a case in which the patent-holder has tried to avoid the limitations of the patent venue statute by suing a party with lesser interest in a forum in which the party in interest could not be sued because BBC was, in fact, successfully added to the lawsuit and will have its day in court in the Illinois Action.

In sum, based upon the factors set forth above, this Court concludes that the customer suit exception does not apply to give precedence to the instant declaratory action lawsuit.[12]

---

[12] BBC argues that *Kahn* dictates that the customer suit exception should apply, but this Court disagrees. In *Kahn*, the Federal Circuit concluded that the customer suit exception did not apply because resolution of the declaratory judgment action would not resolve all the charges against the customers in the customer suit. 889 F.2d at 1081 ("[I]n those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve all charges against the customers in the stayed suit, including liability for damages."). BBC notes that the case explicitly distinguished cases in which the customer suit was merely filed against resellers of the goods, and cases in which the customers agreed to be bound by the outcome of the declaratory judgment action. *See id.,* at

### D. Forum Shopping

BBC also argues that the first-to-file principle should not apply here, alleging that Lumino's decision to file suit in the Northern District of Illinois was solely motivated by forum shopping.[13] Other courts have noted the existence of a "special circumstance[]" justifying departure from the first-to-file rule exists where "forum shopping alone motivated the choice of the situs for the first suit." *Gluckin*, 407 F.2d at 178. "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Rivera Trading Corp. v. Oakley, Inc.,* 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996) (internal citation omitted). In making its argument, BBC highlights the fact that Lumino is a New York corporation, that evidence of infringement was obtained through the purchase of shoes in

---

1082. Although the Court agrees with BBC that these distinguishing characteristics counsel against applying *Kahn* in favor of the Lumino, it does not benefit BBC because the cases that *Kahn* distinguishes all involve declaratory judgment actions filed in the manufacturer's home forum, and where they could not have been sued in the customer lawsuit forum. *See Gluckin*, 407 F.2d 177; *see also Codex,* 553 F.2d 735; *see also Rhode-Gear*, 225 USPQ 1256; *see also Ciba-Geigy*, 439 F. Supp. 625.

[13] It should be noted that BBC did not argue this exception until the eleventh hour, during oral argument and post-hearing submissions. Although BBC was aware of this argument, as Lumino preemptively responded to it in their moving papers, BBC wholly failed to argue that it applied in its opposition papers. Nevertheless, the Court refrains from finding the argument waived for failure to adequately brief. The Court allowed supplemental briefing on this issue and will consider it on the merits.

6

New York, and that none of the five original customer defendants were Illinois corporations or have their primary place of business there.

Although courts have historically applied the "forum shopping" exception to the first-to-file rule, the concern underlying that exception has been largely, if not entirely, addressed by the establishment of the United States Court of Appeals for the Federal Circuit, which retains exclusive jurisdiction to adjudicate appeals of patent cases from federal district courts. *See* 28 U.S.C. § 1295(a)(1). Congress conveyed this jurisdiction over patent cases for the purpose of curbing forum shopping concerns. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 820 (1988) ("When Congress passed the Federal Courts Improvement Act in 1982 and vested exclusive jurisdiction in the Court of Appeals for the Federal Circuit to resolve appeals of claims that had arisen under the patent laws in the federal district courts, it was responding to concerns about both the lack of uniformity in federal appellate construction of the patent laws and the forum-shopping that such divergent appellate views had generated."). Although BBC points to language from old opinions that describe a phenomenon of forum shopping in patent cases because of a perception that the Second Circuit has a hostile attitude towards patent holders,[14] those cases preceded the advent of the Federal Circuit. BBC has failed to cite a single case where a court has trumped the first-to-file principle through a finding of forum shopping since 1982.[15]

In any event, assuming *arguendo* that the "forum shopping" exception still exists in full force, the Court finds that BBC has failed to demonstrate that Lumino's motivation for filing suit in the Northern District of Illinois was *solely* based upon notions of forum shopping. Although other forums may admittedly have stronger connections to the instant lawsuit, Lumino correctly points out the fact that it had the ability to bring suit in Chicago based on the applicable venue statutes, 28 U.S.C. §§ 1400(b), 1391(c), because each of the defendants are national corporations which have a regular and established place of business there. Since the infringement action involved multiple corporate defendants located at various locations throughout the country, Lumino has represented to the Court that it sought to select a convenient, central location for all parties to avoid costly venue disputes.

---

[14] *Rayco Mfg. Co. v. Chicopee Mfg. Corp.,* 148 F. Supp. 588, 592-93 (S.D.N.Y. 1957) ("There appears to be a general attitude among the patent bar that the Second Circuit is most uncharitable to patents. Consequently, a party desiring to have a patent declared invalid will probably seek to sue here, while a party suing to enforce its patent in an infringement suit will probably bring it elsewhere. . . .") (internal citations omitted); *see also Formflex Foundations, Inc. v. Cupid Foundations., Inc.,* 383 F. Supp. 497, 499 (S.D.N.Y. 1974) (noting the Second Circuit's reputation for hostility to patent holders, but refraining from finding forum shopping).

[15] BBC cites *Riviera Trading Corp. v. Oakley, Inc.,* 944 F. Supp. 1150 (S.D.N.Y. 1996), but that case did not base its holding on a finding that the plaintiff had engaged in forum shopping. Although the court in *Oakley* did note that the circumstances might warrant a finding that the plaintiff's selection was motivated "in part" by forum shopping, it found that the defendant had failed to "demonstrate[] that Riviera's filing was motivated solely or largely by forum shopping." *Id.* at 1158.

Although this strategy may ironically have backfired, based on the current venue dispute, the Court does not believe that there is a sufficient basis to conclude that their decision to file suit in the Northern District of Illinois was solely motivated by forum shopping.

### E. Other Transfer Factors

Although this Court concludes that the customer suit exception does not apply to rebut the usual presumption that the earlier-filed Illinois Action takes precedence, that does not conclude the inquiry into whether a transfer is appropriate; the other factors regarding convenience to the parties and the interests of justice must also be considered as well.

The analysis of other factors also leans in favor of transferring the instant action to the Northern District of Illinois. New York is a slightly more convenient forum for parties and witnesses because Lumino is a New York corporation. However, the strength of this factor is mitigated by the fact that Lumino chose the Northern District of Illinois as a forum, and so the production of relevant witnesses and evidence in that district should not be problematic. Familiarity with the governing law counsels the selection of the Northern District of Illinois as the appropriate venue because BBC has filed an abuse of process claim regarding Lumino's actions in filing the Illinois Action, and Illinois state law governs the resolution of that issue.[16] Finally, it would be more efficient to proceed in the Northern District of Illinois because the retailer defendants are parties in that suit, and discovery may be necessary for them with regards to damages issues in the instant suit.[17] BBC and several of the Illinois Action retailer defendants share the same representation, and it does not serve the interests of efficiency to conduct discovery separately.[18] Moreover, resolution of the instant case will not dispose of all the issues at hand in the Illinois Action, and accordingly, that action would need to continue.[19]

---

[16] *See Beezhold v. Allegiance Healthcare Corp.,* 2000 WL 1092886, at *3 (S.D.N.Y. Aug. 4, 2000) (applying Oregon law to abuse of process claim where the process at issue occurred in Oregon); *see also Vista Food Exchange v. Joyce Foods*, 1996 WL 122419, at *3 (S.D.N.Y. Mar. 29, 1996) (applying North Carolina law to an abuse of process claim where the process at issue occurred in North Carolina). As noted *supra*, even if BBC dropped that claim as suggested at oral argument, it would not change the Court's ruling, based on all the other factors contained in this opinion.

[17] On February 28, 2006, Magistrate Judge Boyle considered BBC's motion to bifurcate discovery on liability and damages. In his order, Judge Boyle directed the parties to limit discovery to liability issues, because "damages discovery will undoubtably involve plaintiff's customers, Target Corporation, Footstar Corporation, Kmart Holding Corporation, and Stride Rite Corporation. These entities and other customers are not parties to the within action and, therefore, discovery would have to be carried out under Rule 45 in the absence of consent. This non-party discovery will make damages discovery more expensive and burdensome to all concerned."

[18] *Beck Systems, Inc. v. Marimba, Inc.,* 2001 WL 1502338, at *3 (N.D. Ill. Nov. 20, 2001) ("[G]iven that the same attorneys represent all four defendants, and that the customers will be subject to third-party discovery requests even if separated, it is difficult for the Court to conclude that a separate trial will promote judicial economy and convenience.").

[19] At oral argument, counsel for BBC acknowledged that at least one of the eleven Lighted Shoe Products may have been provided through a source other than BBC.

8

Finally, as discussed *supra*, the pendency of related, first-filed litigation is an important factor that favors transfer to the Northern District of Illinois.[20] This factor is often decisive in a number of cases where the convenience factors are inconclusive. *See Codex*, 553 F.2d at 739 (citing *Pesin v. Goldman, Sachs & Co.*, 397 F. Supp. 392 (S.D.N.Y. 1975)). It is important to avoid duplicative litigation and prevent inconsistent judgments. There is a significant overlap of issues, and allowing two actions to proceed in parallel would require the involvement of two courts, where one would be sufficient.[21] A transfer of the instant case will help reduce the waste of time, effort and money on the part of parties and witnesses that maintaining two related cases in separate fora would require.[22]

### III. CONCLUSION

In sum, after careful consideration of all the relevant factors and the totality of the circumstances, including preventing the unnecessary expense and waste of judicial resources by having two closely related cases proceed in parallel in two separate districts, this Court concludes that this case should be transferred. Because the Court is transferring this case, the Court has not ruled on Lumino's motion to dismiss BBC's abuse of process claim.

Accordingly, the Clerk of this Court shall TRANSFER this case to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 12, 2006
Brooklyn, NY

\* \* \*

The attorneys for the plaintiff are Christelette Angelika Hoey, John P. Moran, Tamara F. Carmichael, and Richard C. Hutchison of Holland & Knight LLP, 195 Broadway, 24th Floor, New York, New York 10007. The attorneys for the defendant are Steven N. Davi of Farrell Fritz, P.C., EAB Plaza, Uniondale, New York 11556-0700; Philip P. Mann of The Mann Law Group, 1420 Fifth Avenue, Suite 2200, Seattle, Washington 98101; and Andrew Staes and Stephen Scallan of Staes and Scallan, P.C., 111 W. Washington, Suite 1310, Chicago, Illinois 60602.

---

[20] *See Wyndam*, 398 F.2d at 619; *see also Goggins*, 279 F. Supp. 2d at 235.

[21] *Mastercard*, 2004 WL 1368229, at *8 ("It would be inefficient and a waste of judicial resources to subject the same parties to suit over interconnected claims concerning identical technology and underlying disputes in two separate fora.") (citing *Wyndham*, 398 F.2d at 619).

[22] *Id.* ("To compel such witnesses to travel to a second forum to give similar testimony on the same technology and dispute would be burdensome and inefficient for the parties, and would not promote judicial efficiency.").